**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)**

| | | |
|---|---|---|
| CYNTHIA GATCHELL | * | |
| *Plaintiff* | * | |
| v. | * | Civil Action No. 8:19-cv-01649-PWG |
| | * | |
| JOHN DOE, *et al.* | * | |
| *Defendants* | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## DEFENDANTS' MEMORANDUM IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

Defendants Walmart, Inc. and Wal-Mart Stores, Inc. (collectively "Defendants" or "Walmart") submit this memorandum in support of their Motion for Summary Judgment in this diversity action for negligence brought by Plaintiff Cynthia Gatchell ("Plaintiff"). There exists no genuine dispute of material fact and Plaintiff cannot meet her burden to show any breach of Walmart's duty to Plaintiff as a business invitee, and therefore Walmart is entitled to summary judgment as to all of Plaintiff's claims.

## I.      INTRODUCTION

Plaintiff claims injury following an incident in which she claims shopping carts pushed by a Walmart employee made contact with her backside when she was standing on the opposite side of the cart corral. Plaintiff did not fall to the ground or drop the beverage she was holding. The cart pusher did not see her before the incident or know that the carts could make contact with her. This case presents nothing more than a mere accident, which is insufficient to prove negligence and for that reason Walmart is entitled to summary judgment.

1

## II.    UNDISPUTED FACTS

On November 25, 2015, around 10:30 p.m., Plaintiff went to the La Plata, Maryland Walmart store to buy sweet potatoes and green beans for Thanksgiving dinner.  *See Deposition of Plaintiff Cynthia Gatchell*, attached as Exhibit 1, at 41:9-19.  As she entered the store, Plaintiff went to get a shopping cart from the cart corral located just inside the store.  *Id.* at 47:20-22. Plaintiff pulled a shopping cart from the corral and turned around with her back to the cart corral. Ex. 1 at 48:8-49:14.  Only a second or two later, as she was placing her sale paper into the basket of the shopping cart, she alleges a shopping cart made contact with her low back, backside, and legs from behind.  *Id.* at 48:8-9, 49:3-6, 52:3-4.  Plaintiff claims she was struck by a "row" of shopping carts but does not know how many carts were in the "row."  *Id.* at 61:14-19.  Plaintiff did not fall or drop the beverage she was holding.  *Id.* at 70:6-20, 48:10-12.  Plaintiff turned around and screamed expletives.  *Id.* at 49:17-50:14.  She saw a man she identified as a Walmart cart pusher on the opposite end of the cart corral.  *Id.* at 54:13-55:13.  Other than the expletives, she did not say anything to him at that time and he went back outside.  *Id.* at 49:21-50:2.  Plaintiff reported her incident to the store, and continued her shopping.  *Id.* at 58:16-22.

The cart pusher has been identified as Daniel Welch.  Mr. Welch was deposed in this case on October 22, 2019.  *See Deposition of Daniel Welch*, attached as Exhibit 2.  Mr. Welch testified that he has worked at the La Plata Walmart as a cart pusher since December 9, 2014.  *Id.* at 5:6-9. Upon his hiring, Mr. Welch underwent computer-based training on how to operate the electronic cart machine, including the number of carts that could be collected via the electronic cart machine, as well as general store safety procedures.  *Id.* at 6:10-22.  This training took approximately one and one-half days.  *Id.* at 7:11-16.

2

Current Store Manager Brett Jens was deposed as Walmart's corporate designee on October 17, 2019. *See Deposition of Brett Jens*, attached as Exhibit 3. Mr. Jens testified that the cart corral has railings on each side, but is open in the front (closest to the women's clothing department) for customers to remove carts for shopping, and is open in the back (closest to the door) for cart associates to stock carts. *Id.* at 20:12-21:7. Mr. Jens confirmed that, in addition to the computer-based training, cart pushers including Mr. Welch would undergo on-the-job training with an experienced cart pusher. *Id.* at 13:6-14. Cart pushers are instructed to collect shopping carts from the parking lot and restock them in the cart corral inside the store. *Id.* at 16:13-19. In doing so, cart pushers can either collect and push carts by hand, or use the electronic cart machine to help them gather and push carts from the parking lot to the front door of the store. *Id.* at 17:7-14. Once the carts get to the store, the cart pusher takes the carts from the electric cart machine and pushes them the rest of the way into the corral by hand. *Id.* at 37:8-14. If a cart pusher uses the electronic cart machine, they are not supposed to put more than 20 carts on the machine. *Id.* at 18:1-5. While stocking carts, cart pushers are also instructed to always be aware of their surroundings and to wait for known customers in the cart corral to vacate the area. *Id.* at 30:9-21.

At the time of the alleged incident, Mr. Welch brought a row of 20 carts into the store using the electronic cart machine, consistent with store policy. *See* Ex. 2 at 18:17-22. When he got the carts into the vestibule, he directed the carts manually into the cart corral to connect them with the carts already inside. *Id.* at 18:1-12; 13:22-14:5. Mr. Welch testified that he observed his surroundings and did not see anyone in the area where he was pushing the carts. *Id.* at 16:4-17. After he pushed the carts into the corral, he heard a female customer yelling profanities at him. *Id.* at 70:5-14. He did not say anything to her at that time. *Id.* He was later informed that the customer claimed she had been struck by shopping carts pushed by him. *Id.* at 54:17-55:9. He was not

subject to any disciplinary action, but was given a verbal "coaching" for the incident.  *Id.* at 59:3-16.  Mr. Jens confirmed that Mr. Welch had no prior coaching or other disciplinary action of any kind prior to the November 25, 2015 incident.  *See* Ex. 3 at 41:1-4.  However, Mr. Jens testified that Mr. Welch was doing exactly what he was supposed to do by watching the carts that he was directing on his side of the cart corral as he pushed them into the corral.  *Id.* at 28:4-11.

Store surveillance video footage from the date of the incident was retained but based on the angle did not capture the alleged contact itself.  Footage of the entranceway does show Mr. Welch bringing a row of carts into the vestibule at approximately 2:44:50 p.m.  *See* Store Surveillance Video, attached as Exhibit 4.  The video confirms, as Mr. Welch testified, that he brought the carts into the store using the cart machine, but directed the carts into the store and cart corral by hand, as per protocol.  *Id.*  Discovery is now closed.  Plaintiff has not designated any expert to testify concerning the liability issues in this case to refute Defendants' corporate designee's testimony that Mr. Welch was doing "exactly what he was supposed to" when he brought the carts into the cart corral, or to testify concerning the weight or speed of the carts as they entered the cart corral as seen on the video.

In sum, Plaintiff has adduced no evidence in discovery to show that Walmart and/or its associate, Daniel Welch, breached any duty to Plaintiff.  There are no facts showing or tending to show that Walmart or Daniel Welch behaved unreasonably or that he should have known that the carts would come into contact with Plaintiff, who was standing on the other side of the cart corral some distance away.  In addition, there is no evidence that Mr. Welch was not properly trained or failed to adhere to store policies while going about his work.  Ultimately and indisputably, the evidence in this case shows nothing more than a mere accident, which is insufficient on its own to

prove negligence.   Accordingly, Plaintiff cannot establish a *prima facie* negligence case and Walmart is entitled to judgment as a matter of law.

### III.    STANDARD OF REVIEW

Fed. R. Civ. Proc. 56 governs summary dispositions and provides, in pertinent part, that summary judgment shall be granted if there exists no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. Proc. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  To meet its burden, the movant must demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant makes his or her showing, the burden shifts to the non-moving party to identify with specificity the material facts within the record that are disputed.  Fed. R. Civ. Proc. 56(a); *Anderson* 477 U.S. at 252; *Celotex Corp.*, 477 U.S. at 322-23.  To do so, Plaintiff must present more than mere conjecture or speculation.  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Anderson*, 477 U.S. at 252.

### IV.    ARGUMENT

This diversity action for negligence is governed by Maryland law.  *See Erie R.R. Co. v. Thompkins*, 304 U.S. 64 (1938).  Plaintiff bears the burden to establish sufficient facts to prove each of the elements necessary to make out a prima facie negligence case.  *See Peterson v. Underwood*, 258 Md. 9, 15 (1970) ("It is fundamental that in a negligence action the plaintiff has the burden of proving all the facts essential to constitute the cause of action.").  "Any theory of liability sounding in negligence is predicated on the existence of the following elements: '(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury

5

proximately resulted from the defendant's breach of the duty." *Warr v. JMGM Group, LLC*, 433 Md. 170, 181 (2013) (quoting *Valentine v. On Target, Inc.*, 353 Md. 544, 549 (1999)).

### A. WALMART IS NOT LIABLE TO PLAINTIFF ON NEGLIGENCE GROUNDS BECAUSE WALMART DID NOT BREACH ANY DUTY OWED TO PLAINTIFF.

Under Maryland law, "a proprietor of a store owes a duty to his [or her] customers to exercise ordinary care to keep the premises in a reasonably safe condition." *Moulden v. Greenbelt Consumer Services, Inc.*, 239 Md. 229, 231-32 (1965). In other words, shopkeepers owe their patrons a "duty of reasonable care for the protection of the business invitee." *Tucker v. KFC Nat. Mgmt. Co.*, 689 F. Supp. 560, 562 (D. Md. 1988), *aff'd*, 872 F.2d 419 (4th Cir. 1989). It is undisputed that Walmart, as a business owner, has a duty to its business invitees, such as Plaintiff, to keep its premises reasonably safe for customers. However, a store owner, such as Walmart, "is not an insurer of the safety of his [or her] customers while they are on the premises and no presumption of negligence on the part of the owner arises merely from a showing that an injury was sustained in the store." *Id.* "The standard is still one of reasonableness, and critical elements of that standard are proximate cause and foreseeability." *Dalmo Sales of Wheaton, Inc. v. Steinberg*, 43 Md. App. 659, 669 (1979).

For that reason, "[i]t is axiomatic that the mere happening of an accident standing alone does not give rise to a presumption of negligence[.]" *Gillespie v. Ruby Tuesday, Inc.*, 861 F. Supp. 2d 637, 645 (D. Md. 2012) (*quoting Unsatisfied Claim & Judgment Fund Bd. v. Bowles*, 25 Md. App. 558, 563 (1975)); *see also Brehm v. Lorenz*, 206 Md. 500, 506 (1955) ("[T]he happening of the accident does not of itself constitute negligence, and evidence of negligence does not give rise to liability unless the negligence was the cause of the injury."). Furthermore, "[t]he evidence is legally sufficient to warrant submission of a case to the jury if it rises above speculation or

6

conjecture, and so affords the rational basis needed for a determination that the defendant was guilty of negligence which produced the accident." *Moulden*, 239 Md. at 232. "A mere surmise that there may have been negligence will not justify the court in permitting the case to go the jury." *Id. See also Brehm*, 206 Md. at 506. As the Court of Appeals explained in *Brehm v. Lorenz*, 206 Md. 500 (1955):

> [I]n any action for damages the court is not justified in inferring negligence merely from possibilities. A mere surmise that there may have been negligence on the part of the defendant will not justify the court in submitting the case to the jury. The plaintiff must produce some evidence that the defendant, either by his act or omission, violated some duty incumbent upon him that caused the injury. If there is no evidence upon which a rational conclusion may be based in support of the plaintiff's claim, the court should withdraw the case from the jury.

*Id.* at 506. *Brehm v. Lorenz* was an auto tort case, in which the plaintiff was seated in a stopped automobile that was rear-ended. *Id.* at 504. The plaintiff claimed that the defendant driver (1) did not keep a proper lookout, (2) was traveling at an excessive rate of speed, and (3) did not have his car under proper control. *Id.* at 506. However, the trial court granted a direct verdict in favor of the defendant at the conclusion of the plaintiff's case because the plaintiff "failed to produce any evidence whatever of **any specific act of negligence** on the part of defendant." *Id.* (emphasis added). The court explained that "[t]here was no evidence that he failed to keep a proper lookout, [ ] no evidence that he did not have his car under proper control[, . . .] no evidence that he was driving too near Plaintiff's car[, . . . and] no evidence that the defendant was driving at an excessive rate of speed." *Id.* at 506-07. The Court of Appeals affirmed the directed verdict, holding that "the mere happening of a rear-end collision of two motor vehicles, **without evidence of the circumstances under which it happened**, is not proof of negligence of either driver." *Id.* at 508 (emphasis added).

In other words, the plaintiff in *Brehm* argued that, because the defendant driver rear-ended the plaintiff, the defendant driver must have done something outside the standard of care. However, the plaintiff failed to appreciate that there must be facts in evidence to show "the circumstances" and what the defendant did that lead to the accident. Maryland law is abundantly clear that "evidence is legally sufficient to warrant submission of a case to the jury if it rises above speculation or conjecture, and so affords the rational basis needed for a determination that the defendant was guilty of negligence which produced the accident." *Moulden*, 239 Md. at 232. "A mere surmise that there may have been negligence will not justify the court in permitting the case to go the jury." *Id. See also Brehm*, 206 Md. at 506.

This case is the same as *Brehm*. Plaintiff essentially argues that because she was "rear-ended" by shopping carts in the Walmart store, Walmart is liable to her for negligence. However, the undisputed facts are these: Daniel Welch did not see Plaintiff prior to the incident, did not see any cart make contact with her, and did not push the carts into the corral any harder than usual. He has completed all required safety trainings. At the time of the incident, he was using an electric cart-collecting machine to maneuver the row of carts into the store. He testified that he had no more than 20 carts on the electric cart pusher, consistent with store policy. He testified that he brought the electric cart pusher into the vestibule, but not into the store. Walmart's corporate designee, store manager Brett Jens, testified that it is permissible to bring the cart pusher into the vestibule, just not the store itself. There is no evidence that Mr. Welch knew or should have known that the carts would make contact with Plaintiff as he went about his normal process of stocking the row of carts into the cart corral.

Plaintiff has not adduced any facts in discovery to show that Walmart or Mr. Welch breached any duty to Plaintiff. As noted above, Maryland law is clear that Walmart is not "an

insurer of the safety of [its] customers" and there is no "presumption of negligence" simply because a Plaintiff alleges an incident occurred in its store.  *Moulden*, 239 Md. at 231-32. Accordingly, Walmart is entitled to summary judgment as a matter of law.

**B.   THE DOCTRINE OF *RES IPSA LOQUITOR* DOES NOT APPLY TO THIS CASE.**

To establish a *prima facie* case of negligence based on the doctrine of *res ipsa loquitur* the plaintiff must present evidence of "(1) a casualty of a kind that does not ordinarily occur absent negligence; (2) that was caused by an instrumentality exclusively in the defendant's control; and (3) that was not caused by an act or omission of the plaintiff."  *Tucker v. Univ. Specialty Hosp.*, 166 Md. App. 50, 59 (2005) (quoting *Holzhauer v. Saks & Co.*, 346 Md. 328, 335-36 (1997)); *see also Munzert v. American Stores Co.*, 232 Md. 97, 104 (1963).  "[T]he doctrine of *res ipsa loquitur* is applicable only when the facts and surrounding circumstances tend to show that the injury was the result of some condition or act which ordinarily does not happen if those who have the control or management thereof exercise proper care.  It does not apply where it can be said from ordinary experience that the accident might have happened without the fault of the defendant."  *Holzhauer v. Saks & Co.*, 346 Md. 328, 336 (1997) (*quoting Greeley v. Baltimore Transit Co.*, 180 Md. 10, 12-13 (1941).

In this case, Plaintiff is precluded from relying on *res ipsa loquitur* because she has presented direct evidence of what she believes to be the negligence of the cart pusher and its causal relationship to the incident.  *See Dover Elevator Co. v. Swann*, 334 Md. 231 (1994) ("[N]umerous Maryland cases have explained that a plaintiff's 'attempt to establish specific grounds of alleged negligence precludes recourse to the doctrine of *res ipsa loquitur*.'") (*quoting Smith v. Bernfeld*, 226 Md. 400, 409 (1961)).  The Court of Appeals in *Dover Elevator Co.* explained that the purpose of the doctrine of res ipsa loquitur "is to afford a plaintiff the opportunity to present a *prima facie*

case when direct evidence of the cause of an accident is not available or is available solely to the defendant." *Id.* at 237.  However, where a plaintiff proffers direct evidence and "purport[s] to furnish a sufficiently complete explanation of the specific causes of [the incident]", the plaintiff is then precluded from relying on *res ipsa loquitur*. *Id.* at 239.  Since Plaintiff here is relying on direct evidence, namely, the cart pusher's actions in handling the shopping carts, she cannot also rely on *res ipsa loquitur*.

## C.  PLAINTIFF REQUIRES EXPERT TESTIMONY TO PROVE CAUSATION BECAUSE HER ALLEGED INJURY INVOLVES A "COMPLICATED MEDICAL QUESTION."

Concurrently with the filing of this Motion for Summary Judgment, Defendants filed a Motion *in Limine* to exclude Plaintiff's expert testimony pursuant to Fed. R. Civ. P. 37(c)(1) for failure to comply with the disclosure requirements of Fed. R. Civ. P. 26(a)(2).  Assuming the Motion *in Limine* is granted, Plaintiff would be unable to meet her burden to prove causation, because the nature of her alleged injury constitutes a "complicated medical question" for which expert testimony is required, and therefore unable to prove an essential element of her case.

Plaintiff bears the burden to establish that her claimed damages are causally related to her alleged injuries, and that her claimed medical expenses are fair, reasonable and necessary.  *See Desua v. Yokim*, 137 Md. App. 138 (2001).  Given the facts and circumstances of this case, expert testimony is required for Plaintiff to prove her case.  The seminal case in Maryland regarding the requirement for expert testimony to establish causation and reasonableness of medical records and bills is *Wilhelm v. State Traffic Safety Comm'n*, 230 Md. 91 (1962).  *Wilhelm* stands for the proposition that expert medical testimony is required to establish causation "where the cause of an injury claimed to have resulted from a negligent act is a complicated medical question involving fact finding which properly falls within the province of medical experts[.]"  *Id.* at 100 (emphasis

added).  Whether an injury involves a "complicated medical question" depends on the nature of the alleged injury, past medical history, and the timing of medical treatment after injury, among other factors.

In *S.B. Thomas Inc. v. Thompson*, 114 Md. App. 357 (1997), the Maryland Court of Special Appeals addressed whether a "complicated medical question" arose in the context of a previous back injury and a subsequent trauma.  *S.B. Thomas* involved a workers' compensation claim for back pain occurring approximately 9 months after an initial injury, when the plaintiff had a pre-existing known back injury.  In that case, the court affirmed the trial court's determination that the plaintiff's injury involved a complicated medical question for which expert testimony was required.  In so holding, the Court of Special Appeals explained that:

> A genuine jury issue as to the causal relationship between an earlier injury and a subsequent trauma may sometimes be generated, even in the absence of expert legal testimony, when some combination of the following circumstances is present: 1) a very close temporal relationship between the initial injury and the onset of the trauma; 2) the manifestation of the trauma in precisely the same part of the body that received the impact of the initial injury; 3) as in *Schweitzer v. Showell*, some medical testimony, albeit falling short of a certain diagnosis; and 4) an obvious cause-and-effect relationship that is within the common knowledge of laymen.

> Conversely, the causal relationship will almost always be deemed a complicated medical question and expert medical testimony will almost always be required when one or more of the following circumstances is present: 1) some significant passage of time between the initial injury and the onset of the trauma; 2) the impact of the initial injury on one part of the body and the manifestation of the trauma in some remote part; 3) the absence of any medical testimony; and 4) a more arcane cause-and-effect relationship that is not part of common lay experience (the ileitis, the pancreatitis, etc.)

> When all is said and done, we are perhaps reduced to a truism: the stronger the case for the causal connection even absent expert medical testimony, the lesser the need for such testimony; the weaker the non-medical case for the causal connection, the greater the need for such testimony. There is more involved, of course, than a simple inverse proportion between the strength of the non-medical-expert case of causation and the need for expert medical testimony. Some questions of causation might involve medical knowledge so recondite that expert testimony would always be required. Other questions of causation would not. There can be no hard and fast

11

rule controlling all cases. **It does appear clear, however, that when there is a genuine issue as to whether there is a causal connection between an earlier injury and a subsequent disability, in the majority of cases it will be a complicated medical question requiring, as a matter of law, expert medical testimony**.

*Id.* at 381–83 (emphasis added).  To state this principle in general terms, the court looks to whether there is an "obvious cause-and-effect relationship between the accident and the claimed total disability that is within the common knowledge of laymen" to determine whether expert testimony is required.  *Shpigel v. White*, 357 Md. 117, 131 (1999).  In this case, Defendant has a "cause-and-effect relationship that is not part of common lay experience" due to her significant pre-existing conditions.

The Court of Special Appeals applied this analysis in another workers' compensation case, *American Airlines Corp. v. Stokes*, 120 Md. App. 350 (1998).  In *Stokes*, the plaintiff worker alleged disability related to a back injury.  However, like Plaintiff in the instant case, evidence in that case demonstrated that the worker had "a long history of chronic back problems" and that the pre-existing condition "presented a far more likely explanation for his ultimate disability that the modest strain he suffered on August 5."  *Id.* at 361.  In concluding that Plaintiff's injury constituted a "complicated medical question," requiring expert testimony, the Court of Special Appeals explained that "evidence, including expert medical testimony, establishing **the possibility of an alternative theory of causation may be the decisive factor** that transforms a non-medically complicated question of causation, requiring no expert medical testimony, into a complicated medical question, requiring such testimony as a matter of law."  *Id.* at 363 (emphasis added).

Summary judgment based on the issue of causation is appropriate, even in a seemingly simple slip-and-fall case, where Plaintiff's claimed injuries are too complicated to be submitted to a jury in the absence of expert testimony,.  For example, in *Desua v. Yokim*, 137 Md. App. 138

(2001), the Court of Special Appeals upheld the trial court's grant of summary judgment in favor

of the defendant where the plaintiffs in a personal injury case did not have the requisite expert

testimony to demonstrate causation and therefore could not prove an essential element of their

negligence case.  In *Desua*, the plaintiff claimed a soft-tissue neck injury following a "relatively

simple, rear-end [auto] accident."  *Id.* at 140.  Apparently considering the injuries to be self-

evident, the plaintiff did not designate a single expert witness and intended to put forth her case

without any expert opinion testimony as to causation or reasonableness of the plaintiff's medical

bills.  *Id.*  The defendant moved for summary judgment on the grounds that the plaintiff could not

establish causation, an essential element of her case, without expert testimony to explain the causal

connection between the accident and her alleged injuries.  *Id.*  The trial court agreed and granted

summary judgment in favor of the defense, stating that an expert was needed in the context of a

"soft tissue injury to establish causation because there are many reasons why someone might have

a neck injury besides a car accident."  *Id.*  On appeal, the Court of Special Appeals affirmed,

explaining that:

> [T]he cause-and-effect relationship in this particular case is not obvious enough to
> be considered 'within the common knowledge of laymen.' Here, appellant claims
> that she was 'thrown forwards and backwards' as a result of what she described as
> 'a relatively simple, rear-end accident' that 'is of the sort that does not justify huge
> expenses.' Yet, she is seeking 'One Hundred Fifty Thousand Dollars ($150,000.00)
> in compensatory damages plus interest and costs.' Because of (1) the disparity
> between the damage to appellant's vehicle and the amount of her personal injury
> claim, and (2) the amount of time between her emergency room visit and her
> appointment with a treating physician, the question of causal connection that is
> presented by the facts of this case cannot be submitted to the jury in the absence of
> expert testimony. We agree with appellee's contention that **in the absence of
> expert testimony 'a jury is left to sheer speculation[.]' Given the circumstances
> in this case, expert testimony is required to show causation**.

*Id.* at 148-49 (emphasis added) (footnotes omitted).  Thus, the Court of Appeals held that "without

expert testimony, appellant could not generate a jury question on the issue of whether the pain and

suffering damages being sought were caused by the [alleged incident]" and therefore summary judgment was proper.  *Id.* at 149.

In this case, Plaintiff claims extensive, ongoing, and permanent back pain and injuries. However, the undisputed facts concerning the mechanism of the injury is that she was standing up and did not fall down.  This is plainly not the kind of injury that lends its self to a simple "cause and effect relationship" that would be "within the common knowledge of laymen."  Furthermore, Walmart's medical expert, Dr. Riederman, would testify consistent with his expert report that Plaintiff's alleged complaints are related to "age-related degenerative changes" and therefore presents an "alternate theory of causation" which, under the analysis in *Stokes*, elevates Plaintiff's causation issue to a "complicated medical question."  *See* attached Expert Report of Dr. Riederman, attached as Exhibit 5.  In addition, Plaintiff suffered a motorcycle accident in August 2018, nearly one year after the Walmart incident, for which she also treated for back injuries, including physical therapy.  *See* Ex. 1 at 148:11-153:11.  Two months after the motorcycle accident, she also had a fall at work when she fell backwards while sitting in a chair.  *Id.* at 154:9-155:17.

Under these circumstances, for a lay jury to consider Plaintiff's alleged damages for purposes of causation without expert testimony would require the jury to engage in impermissible speculation and conjecture.  Without question, a lay jury could not be tasked with attempting to understand the complex mechanics of the spine, or attempt to parse out the injuries related to the shopping cart incident at Walmart versus the motorcycle accident or the fall at work.  For all of these reasons, expert testimony is required for Plaintiff to establish causation between the alleged incident and her alleged injuries.  Therefore, assuming Plaintiff's experts are excluded pursuant to Fed. R. Civ. P. 37(c)(1), Plaintiff would be unable to meet her burden to establish an essential

element of her case.  Accordingly, Walmart would be entitled to summary judgment as a matter of law on that ground.

## V.    CONCLUSION

WHEREFORE, for the foregoing reasons, Defendants Walmart, Inc. and Wal-Mart Stores, Inc. respectfully pray this Honorable Court to grant this Motion for Summary Judgment, and for such further relief as justice may require.

Respectfully submitted,

*/s/ Jennifer M. Alexander*
Jennifer M. Alexander
jalexander@mhlawyers.com
Fed. Bar No.:  15222

*/s/ Kelly S. Kylis*
Kelly S. Kylis
kkylis@mhlawyers.com
Fed Bar. No.:  14126

**MCNAMEE HOSEA JERNIGAN KIM
GREENAN & LYNCH, P.A.**
888 Bestgate Road, Suite 402
Annapolis, Maryland 21401
410-266-9909
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 30th day of July, 2020, a copy of the foregoing was electronically filed and served via the Court's CM/ECF Systems upon:

Michael A. Klopfer, Esquire
James E. Farmer, LLC
3475 Leonardtown Road, Suite 200
Waldorf, Maryland 20601
*Attorneys for Plaintiff*

*/s/ Jennifer M. Alexander*
Jennifer M. Alexander, Esquire

15