IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

CYNTHIA L. GATCHELL :

    Plaintiff :

vs. : Case No.: 8:19–cv–01649–PWG
                                 Judge Paul W. Grimm
WALMART, INC., et al. :

    Defendants. :

## MEMORANDUM IN SUPPORT OF PLAINITFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S COUNTER MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff, Cynthia Gatchell, by and through her attorney, Michael A. Klopfer, Esq., and the Law Offices of James E. Farmer, LLC., hereby files this Memorandum in Support of her Opposition to Defendant Walmart, Inc., and Defendant Walmart-Stores, Inc.'s, Motion for Summary Judgment and hereby submits her own Counter Motion for Partial Summary against Defendants. In support thereof, Plaintiff states as follows;

### UNDISPUTED FACTS

On November 25, 2015, a day before Thanksgiving, Plaintiff was at Defendant's business, Walmart [1], located at 44 Drury Drive, La Plata, Maryland 20646, to buy food. *(See Exhibit 1, Deposition of Plaintiff, page 47, lines 12-19).*

---

1. Defendant Walmart Stores East, LP, leased the actual building from Walmart Real Estate Business Trust and operated the business therefrom. Walmart, Inc., is the parent company of both these subsidiaries. It has been agreed and stipulated to that Plaintiff has sued the correct entities. Therefore, the remaining corporate defendants will be referred to hereinafter as "Walmart". *(See Exhibit 2, Stipulation and Agreement and Exhibit 3, Deposition Transcripts of Corporate Designee, Mr. Brett Jens, page 7, lines 3-22, page 8, line 1 – 16).*

Daniel Welch, at the time, was employed as a cart pusher with Walmart.   (*See Exhibit 2, Stipulation and Agreement & Exhibit 3, Deposition of Corporate Designee Brett Jens, page 9, lines 2-4.)*   As a cart pusher, he was hired to move shopping carts from the parking lot to an area inside the store for customers.   (*See Exhibit 3, page 16, lines 2-19*).   In doing so, he could push the carts in a group or use an electronic cart pusher.   (*See Exhibit 3, page 17, lines 3-10.)*

Once inside the store, the carts are stored in an area, referred to as a "corral," towards the front of the store.   (*See Exhibit 3, page 18, lines 10-14.*).   They are stored in several rows. (*See Exhibit 3, page 19, lines 5-15.*)   There are two rails, one to the left and one to the right. (*See Exhibit 3, page 20, lines 12-15.*)   There are no rails in the front.   (*See Exhibit 3, page 20, lines 16-18.*)   There are no rails in the front because Walmart expects customers to retrieve shopping carts from the front. (*See Exhibit 3, page 20, lines 19-22, page 21, lines 1-2.*)   There are no rails in the back, because this is where cart pushers are loading carts into the corral.   (*See Exhibit 3, page 21, lines 4-7.*)   Hereinafter, the area in which the shopping carts are stored inside the store will be referred to as, "the cart corral".

Walmart knew the cart corral inside its store was dangerous.   Specifically, Corporate Designee Brett Jens admits, Walmart knew the carts in the cart corral, when being replenished by employees, may move forward into the area of where customers retrieve them.   (*See Exhibit 3, page 25, line 22, page 26, lines 1 – 20*).   Mr. Jens explains Walmart "encourage(s) safety all the time" so that does not happen.   (*Id.*).   Mr. Welch is also admittedly aware of this as it has happened to him before.   (*See Exhibit 4, Deposition of Daniel Welch, page 42, lines 22, page 43, lines 1-10*).   Walmart, and Mr. Welch, were also aware that November 25, 2015, a day before Thanksgiving, generally is a busier time in which there are more customers than usual.

(*See Exhibit number 3, page 44, lines 13-16; See Exhibit 4, page 67, lines 5-12*).

Daniel Welch, as a cart pusher, had rules to obey when executing his duties job duties. When using an electronic cart pusher, the was to gather 20 carts or less from the parking lot, stand at the front of the row of carts, and steer them while using the remote control to activate the machine which pushes the carts from the back of the row.   (*See Exhibit 3, page 17, lines 19-22, page 18, lines 1-5*).   Upon reaching the front door with the row of shopping carts, he must turn the device off and manually push the carts into the cart corral.   (*See Exhibit 3, page 36, lines 17-22, page 37, lines 1-18*).   The only force that should be moving the carts into the cart corral should be from the employee manually pushing them into the cart corral.   (*See Exhibit 3, page 37, lines 19-22, page 38, lines 1-3).*   When moving carts into the cart corral, he must also be aware of his surroundings and provide safety for the customers.   (*See Exhibit 3, page 33, lines 6-15*).   This includes, waiting for customers in the front of the cart corral to vacate before moving the carts therein.   (*See Exhibit 3, page 30, lines 9-21*).

On November 25, 2015, Mr. Welch used an electronic cart pusher to move a row of shopping carts from the outside parking lot to inside the cart corral.   (*See Exhibit 3, page 38, lines 11-22, page 39, lines 1-20, & See Exhibit number 5, Short Video of Mr. Welch moving the carts to the cart corral*).   Upon reaching the doors, he did not turn the electronic cart pusher off and manually push the carts, but he instead continued to use the electronic cart pusher to assist him in pushing the carts into the cart corral.   (*See Exhibit 3, page 39, lines 5-22, page 40, lines 1-12 & See Exhibit 5*).   Mr. Jens explained he knew this to be so because the carts behind Mr. Welch were still in motion and he was steering he carts.   (*See Exhibit 3, page 62, lines 4-22, page 63, lines 1-4*).   Mr. Welch says he turned the device off at 2:44:58 pm on the video, which

is when the carts he is guiding with the electronic cart pusher are actually now contacting the carts inside the cart corral.   (*See Exhibit 4, page 42, lines 16-21 & See Exhibit 5, See Exhibit 6, still photos of the video at 2:44:58*).

Mr. Welch claimed initially, that before moving the carts inside the cart corral, he looked at his surroundings for "one (1) minute," "sixty (60) seconds."   (*See Exhibit 4, page 16, lines 4-13*).   Upon showing him the video, however, he admits when he reaches the inside of the store, until the time the carts reach the corral, he does not see himself look to the front of the corral for customers.   (*See Exhibit 4, page 41, lines 16-22, page 42, lines 1-14*).   The video confirms it was actually about eight (8) seconds from the time her entered the store until the time the carts he was guiding reach the cart corral. (*See Exhibit 5*).

Unfortunately, as Mr. Welch was moving the carts into the cart corral, disregarding the rules and the safety of customers, he heard a scream.   (*See Exhibit 4, page 55, 4-11*).   The scream came from a customer, the Plaintiff in this matter, Ms. Gatchell.   (*See Exhibit 1, page 49, lines 15-17*).

Ms. Gatchell was at the front of the cart corral and just selected a shopping cart therefrom.   After selecting the shopping cart, she put her paper in the cart and turned so that he back was to the cart corral.   (*See Exhibit 1, page 48, lines 8-9, page 49, lines 1-14*).   The entire row of shopping carts hit her in the lower back, butt and the back of her legs.   (*See Exhibit 1, page 51, lines 22, page 52, lines 1-7*).   She explains it felt like the carts were "crashing into [her] body," causing her to "jolt."   (*Exhibit 1, page 54, lines 8-12*).   She was holding onto a shopping cart at the time she was struck, so obviously she did not fall.   (*Exhibit 1, page 69, lines 20, page 70, lines 1-5*).   After being struck by the row of shopping carts and screaming,

4

Ms. Gatchell turned around and saw Mr. Welch, the employee wearing the yellow vest, who stared at her and walked off. (*See Exhibit 1, page 49, lines 15-19, page 54, lines 13-22, and page 55, lines 1-15*). Ms. Gatchell, being in pain, went to the Subway inside Walmart, near the cart corral area, to sit down and fill out and incident report with the manager. (*See Exhibit 1, page 58, lines 8-17*). While there, Mr. Welch returned and apologized to Ms. Gatchell for the occurrence. (*See Exhibit 1, page 57, lines 9-16*). Mr. Welch was later disciplined for operating the electronic cart pusher recklessly. (*See Exhibit 7, discipline document; Also see Exhibit 3, page 21, lines 19-22, page 22, lines 1-11, page 41, lines 3-4; Also see Exhibit 4, page 57, lines 18-22, page 58, lines 1-15).*

Within an hour or two, Ms. Gatchell went to Charles Regional Medical Center Urgent care due to the pain where she was documented to have positive welling, lower back pain 6/10, and radiating pains. She was given an injection. (*See Exhibit 8, Charles Regional Medical Center Urgent Care, redacted for privacy concerns*). Even Defendants doctor, Dr. Riederman, admits that she was injured from the occurrence including but not limited to contusions of the lower back and the legs. (*See Exhibit 9, Dr. Riederman report, page 4, redacted for privacy reasons*). After doing chiropractic care and seeing an Orthopedic doctor, and not being able to complete her job duties, Mr. Gatchell was referred for an "MRI lumbar spine dx low back pain post trauma." (*See Exhibit 10, MRI Referral, redacted for privacy reasons*). She had the MRI of her lower back on December 23, 2015, within thirty (30) days, demonstrating L4-L5, L5-S1 disc bulges with annular tears. (*See Exhibit 11, MRI report, redacted for privacy reasons*).

Despite the obvious injuries she sustained, Walmart continuously attempts to call this a minor mechanism of injury and downplay the occurrence; however, ***destroyed/concealed the***

5

***video of Plaintiff being hit***.   As Ms. Gatchell could not afford the prescribed medication from

urgent care, she went back to Walmart to ask if they could fill it for her since the injury was

caused there.   (*See Exhibit 1, page 99, lines 3-19)*. Ms. Gatchell, and her husband, were told by

Don, the manager who took her initial claim report, that "[he] looked at the video. It didn't look

like she got hit that hard." (*See Exhibit 1, page 99, lines 3-19*).   Additionally, Mr. Welch's

disciplinary document specifically states a customer was at the front of the cart corral when Mr.

Welch moved the carts into the corral and she should have waited.   (*See Exhibit 7, disciplinary

document*).   Don must have seen the video to provide such a detailed statement.

Additionally, Walmart's contention that there is no such video does not pass the smell-

test.   They want us to believe there is a small blind spot with the camera systems, in the front of

the store, exactly where plaintiff was standing when she was truck.   This seems a little too

convenient.

<u>PROCEDURAL HISTORY AND REMAINING COUNTS</u>

Plaintiff filed suit in the Circuit Court of Charles County, Maryland, on November 12,

2018.   An Amended Complaint was filed on or about March 5, 2019.   Pursuant to an

Agreement and Stipulation, Plaintiff dismissed the individual Defendants, Daniel Welch and

Steve Teeter, from the lawsuit leaving the remaining Defendants Walmart Stores, Inc., and

Walmart Stores East, LP., with the remaining Counts;

> a. Count II (Respondeat Superior against Walmart Inc),
> b. Count III (Respondeat Superior against Wal-Mart Stores East, LP),
> c. Count V (Respondeat Superior against Walmart Inc),
> d. Count VI (Respondeat Superior against Wal-Mart Stores East, LP),
> e. Count VII (negligent hiring and retention against Walmart, Inc.)
> f. Count VIII (negligent hiring and retention against Wal-Mart Stores East, LP)
> g. Count IX (Negligence against Walmart, Inc., failure to train)
> h. Count X (Negligence against Wal-Mart Stores East, LP for failure to train)

6

    i.   Count XI (Negligence against Walmart, Inc.)
    j.   Count XII (Negligence against Wal-Mart Stores East, LP)
    k.  Count XIII (general prayer for relief against all defendants)

Plaintiff will not be moving forward with Counts V and VI as there has been no evidence that Steve Teeter was negligent and therefore no vicarious liability can be had against the Corporate Defendants through him.    Therefore, the remaining counts Plaintiff intends to move forward with are as follows;

    a.   Count II (Respondeat Superior against Walmart Inc),
    b.   Count III (Respondeat Superior against Wal-Mart Stores East, LP),
    c.   Count VII (negligent hiring and retention against Walmart, Inc.)
    d.   Count VIII (negligent hiring and retention against Wal-Mart Stores East, LP)
    e.   Count IX (Negligence against Walmart, Inc., failure to train)
    f.   Count X (Negligence against Wal-Mart Stores East, LP for failure to train)
    g.   Count XI (Negligence against Walmart, Inc.)
    h.   Count XII (Negligence against Wal-Mart Stores East, LP)
    i.   Count XIII (general prayer for relief against all defendants)

Defendant's Motion, however, does not discuss each Count individually, however, simply alleges Walmart is not directly liable for the occurrence, nor vicariously liable for the occurrence.    As Demonstrated, this is simply not true and to the contrary, Walmart is liable as a matter of law.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).    In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).   A fact is "material" if it

"might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. Id. at 248-49.

A summary judgment motion is not a substitute for trial.   Rather it is used to dispose of cases when there is no genuine dispute of a material fact and the moving party in entitled to judgment as a matter of law." Okwa v. Harper, 360 Md. 161, 178 (2000); *see also* Md. Rule 2-501(e); Ungar v. Handelsman, 325 Md. 135, 146-47 (1992).   "In granting a motion for summary judgment, the trial judge may not resolve factual disputes, but instead is limited to ruling on matters of law." Okwa, 360 Md. At178; *see also*, Pittman v. Atlantic Realty Co., 359 Md. 513, 537 (2000).

When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law. Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Philip Morris, Inc. v. Harshbarger*, 122 F.3d 58, 62 n.4 (1st Cir. 1997).

## LAW AND APPLICATION

### A:     DEFENDANT WALMART IS LIABLE FOR DIRECT NEGLIGENCE

The duty of the owner or possessor of property to people injured on their property depends on the injured persons status on the property.   *MPJI-Cv 24:1*. An invitee is a person who has been invited or permitted to be on another's property for purposes related to the owner's or occupier's business.   *MPJI-Cv 24:2*. The duty owed to an invitee is to use reasonable care to see that those portions of the property that the invitee may be expected to use are safe. *MPJI-Cv 24-3*.   Where a storekeeper invites the public to come upon his premises to buy his wares, he is

8

held to a **positive affirmative duty to protect them,** not only against dangers which may arise

from some defect or unsafe condition of the physical property upon which they are invited to

enter, but against dangers which may be caused by the negligent acts of his employees, or even

of customers, **where, as a reasonably prudent person, he should have anticipated the**

**possible occurrence and the probable results** of such acts.   Eyerly v. Baker, 168 Md. 599, 178

A. 691, 694 (1935).

Mr. Jens admits Walmart knew the cart corral posed a danger to customers.   Walmart

knew customers getting carts from the front could be struck when employees are replenishing the

carts from the back.   This is undisputed.   Therefore, Walmart has a duty to protect customers,

including Plaintiff, against this danger.

Walmart, however, took no action.   They did not place warning signs.   (*See Exhibit 3,*

*page 21, lines 8-17*).   Despite knowing Thanksgiving was a busy time, they did not add special

precautions.   (*See Exhibit 3, page 44, lines 13-22*).   Walmart simply, "encouraged" safety (*See*

*Exhibit 3, page 26, lines 9-11*).

No reasonable person could determine Walmart acted reasonably in light of the known

dangers.   Walmart could have done many things. For example; a sign warning the customers, a

policy requiring the cart pusher to sound the horn when entering the corral area (there are horns

on the cart pusher remote control), closing the front rail and allowing customers to get the carts

from the back, placing a little mechanism in the front of the corral which applies some resistance

if the carts do start to shoot forward, employing an extra person to stand at the front of the cart

corral while carts are being loaded or even ask the employee checking customer receipts to

temporarily assist the cart pusher in assuring the front is clear.   But they did not.

This is not a situation in Plaintiff is asking that Walmart be treated as an "insurer of its premises," as the Defendant claims we are doing.   This is not a slip and fall on some unknown liquid.   It is completely different.

Walmart's cart corral and policies created a danger to its customers.   It's lack of action to protect customers about these known dangers, that it created, is Negligent.   Walmart's direct negligence is admitted through its own witnesses, it is clear, there are no disputes of material fact, and Plaintiff is entitled to judgment as a matter of law as to liability.   For those reasons also, Defendant is not entitled to judgment as a matter of law taking the facts most favorable to Plaintiff.

**B:   DEFENDANT WALMART IS VICARIOUSLY LIABLE FOR THE NEGLIGENCE OF THEIR EMPLOYEE, DANIEL WELCH**

An employer or a principal is responsible for damages caused by the negligent acts of its employees or agents if committed within the scope of their employment. *MPJI Cv 3:3*.

It's stipulated that Daniel Welch was an employee of Walmart, that he was the employee seen in the video pushing the shopping carts into the cart corral at the time of the occurrence, and that he was acting within the scope of his employment at the time of the occurrence.   Therefore, the question becomes was he negligent in doing so.

Negligence is defined as doing something that a person using reasonable care would not do, or not doing something that person using reasonable care would do.   Reasonable care meaning the caution, attention, or skill a reasonable person would use under similar circumstances. *MPJI-Cv 19:1*.

There's no dispute Mr. Welch had a duty to act reasonably, use prudent care and to

10

follow the policies his employer set forth while performing his job as a cart pusher.    Mr. Jens admits that cart pushers who choose to use the electronic cart pusher must;

> (1) be aware of surroundings and provide safety to customers,
> (2) wait for a customer to exit the cart corral before loading,
> (3) move no more than twenty carts at a time,
> (4) turn off the electronic cart pusher when reaching the door, and
> (5) manually push the carts into the cart corral (no other forces applied).

As stated in *Ayala*, a "duty to look implies the duty to see what is in plain sight unless some reasonable explanation is shown.    Where there is nothing to obstruct the vision of a driver, it is negligence not to see what is clearly visible."  Ayala v. Lee, 215 Md. App. 457, 471, 81 A.3d 584, 592 (2013) (quoting Dashiell v. Moore, 177 Md. 657, 661, 11 A.2d 640 (1940).

Plaintiff was in front of the cart corral, in the middle, at the time she was struck.    She had selected her cart.    She had placed her paper in the cart.    She had turned around and seconds afterwards she was struck.    Plaintiff was there to be seen but Mr. Welch, despite having a duty to keep a proper lookout, admits he did not see her.    That is negligence.    He was asked if the Plaintiff just suddenly jumped out, he did not know.   (*See Exhibit 5, page 63, lines 18-22, page 64, line 1*).    The reason he did not know is because he was not paying attention.    He also says he looked for sixty (60) seconds, but when questioned with the video, admits that he does not see himself look at the front of the cart corral and the video shows there is only about eight (8) seconds from the time he enters the store until the time the carts he is guiding with the electronic cart pusher reach the cart corral.

Mr. Welch also continued to use the electronic cart pusher when he entered the store. Instead of turning the device off and using only manual force to put the carts into the corral, like his rules require, he continued to use the device until the row of carts he was moving reached and

began connecting to the carts in the cart corral. Mr. Jens admits this.    Mr. Welch says he turned

the device off at 2:44:58 pm, when the carts reach the cart corral and start connecting.    Then,

proving he is unfit and untrained still years later, says "I don't think you can stop it with the

remote.    I do not know." (*See Exhibit 4, page 37, line 22, page 38, line 1).*    It is clear, admitted

to, and cannot be disputed, that Mr. Welch used force from the electronic cart pusher to move the

carts into the cart corral.

Mr. Welch was also moving more than twenty shopping carts when this occurred which

is demonstrated by the video.    This is against his policies.    Mr. Welch says he does not know

exactly how many he was moving, but says it cannot be over twenty because her "never" moves

more than twenty shopping carts.    This is not true and Plaintiff intends to impeach him at trial.

Walmart, after the occurrence, actually disciplined Mr. Welch for his "reckless use of

equipment."    Mr. Jens said it was because Mr. Welch was pushing the carts without awareness

of what was in front of him.    (*See Exhibit 3, page 27, lines 14-22, page 28, lines 1-2).*    He then

tries to say Mr. Welch "did exactly what he should have done," and then changes his answer

again by saying that "[he] does not know" if Mr. Welch looked or did not look at his

surroundings.    (*See Exhibit 3, page 28, lines 3-22, page 29, lines 9-22, page 30, lines 1-2).*    The

undisputed fact of the matter is, Mr. Welch's supervisor cited him for "reckless use of

equipment" for failing to observe Ms. Gatchell and for failing to wait for her to leave before

moving the carts into the corral.

It is clear, undisputed, and admitted that Mr. Welch violated his policies by not keeping a

proper look (failing to see what was there to be seen), by not seeing and allowing the customer to

leave the cart corral area before loading the carts therein, by using the electronic cart pusher to

assist in loading the carts into the cart corral despite the duty to use manual force only and by, as Plaintiff alleges the video demonstrates, moving more than twenty shopping carts at a time. Therefore, Plaintiff is entitled to judgment as a matter of law.   For the same reasons, Defendant is not entitled to judgment as a matter of law.

## C:   PLAINTIFF HAS NOT WAIVED HER RIGHT TO RELY UPON RES IPSA LOQUITUR

In some instances, Plaintiffs may use the doctrine of res ipsa loquitur as a method for allowing a jury to decide that the occurrence causing the injury would not have occurred but for negligence. To invoke the doctrine requires proof that, (1) a casualty of a sort which usually does not occur in the absence of negligence, (2) it was caused by an instrumentality within the defendant's exclusive control, (3) and it occurred under circumstances indicating that the casualty did not result from the act or omission of the plaintiff.   Dover Elevator Co. v. Swann, 334 Md. 231, 236–37, 638 A.2d 762, 765 (1994).

Plaintiff follows the majority rule that an unsuccessful attempt to prove specific negligence on the defendant's part, or the introduction of evidence of specific negligence not clearly establishing the precise cause of injury, will not deprive the plaintiff of the benefits otherwise available under the doctrine.   Vito v. Sargis & Jones, Ltd., 108 Md. App. 408, 417–20, 672 A.2d 129, 134–35 (1996), aff'd sub nom. Cogan Kibler, Inc. v. Vito, 346 Md. 200, 695 A.2d 191 (1997).

At the outset, Defendants attempt to limit Plaintiff's trial strategy is not proper.   Trial has not occurred and contrary to Defendants blanket statement that Plaintiff cannot rely upon the

doctrine, it is not correct as stated in *Vito*.   The elements of the doctrine are met by the facts of

this case.   First, Mr. Jens admits that it there is a possibility the carts in the cart corral could

come forward as employees are loading the corral but explains, it doesn't generally happen

because we encourage safety.   The opposite then must be true, it happens when an employee is

not being safe.   Second, the carts and the electronic cart pusher where in Mr. Welches hands and

he had exclusive control.   Thirdly, there is nothing to indicate that Plaintiff was doing anything

other than retrieving a shopping cart at the time of the occurrence.

Therefore, the doctrine is still a tool upon which the Plaintiff can, and may rely, and the

elements are satisfied.   Therefore, Defendant's Motion for Summary Judgment must be denied

as the doctrine gets the question to the jury.

**D:     PLAINITF'S INJURIES ARE NOT COMPLEX MEDICAL ISSUES
REQUIRING EXPERT TESTIMONY & PLAINTIFF HAS PROPERLY
DISCLOSED AND IDENTIFIED MEDICAL EXPERTS**

Defendant Walmart has filed a Motion in Limine asking this Honorable Court to preclude

Plaintiff's Experts from testifying.    If the Motion is granted, Defendant argues that Plaintiff

cannot produced sufficient evidence for the jury to decide Plaintiff injuries because the medical

issues in this case are complex and require medical expert testimony.    Plaintiff has filed an

Opposition to Defendant's Motion in Limine separately, which is incorporated by reference

herein, and which demonstrates Plaintiff has identified and disclosed the experts she intends to

use, has disclosed the information required on different occasions and timely, provided the

medical records for those experts and had provided sufficient disclosures pursuant to the Rules.

However, for the sake of preserving the record, Plaintiff still makes the following arguments

regarding the issues of whether this case involved a complex medical issue.

The decision as to whether or not expert testimony is essential is a case by case analysis depending on the facts and circumstances of the case.   Am. Airlines Corp. v. Stokes, 120 Md. App. 350, 355–56, 707 A.2d 412, 415 (1998).   However, the court did lend some guidance on the issue, quoting S.B. Thomas, Inc. v. Thompson, 114, Md. App. 357 (1997),

> A genuine jury issue as to the causal relationship between an earlier injury and a subsequent trauma may sometimes be generated, **even in the absence of expert legal testimony,** when some combination of the following circumstances is present: 1) a very close temporal relationship between the initial injury and the onset of the trauma; 2) the manifestation of the trauma in precisely the same part of the body that received the impact of the initial injury; 3) as in *Schweitzer v. Showell* [19 Md.App. 537, 313 A.2d 97 (1974)], some medical testimony, albeit falling short of a certain diagnosis; and 4) an obvious cause-and-effect relationship that is within the common knowledge of laymen.

> Conversely, the causal relationship will almost always be deemed a complicated medical question and expert medical testimony will almost always be required when one or more of the following circumstances is present: 1) some significant passage of time between the initial injury and the onset of the trauma; 2) the impact of the initial injury on one part of the body and the manifestation of the trauma in some remote part; 3) the absence of any medical testimony; and 4) a more arcane cause-and-effect relationship that is not part of common lay experience (the ileitis, the pancreatitis, etc.)   Am. Airlines Corp. v. Stokes, 120 Md. App. 350, 355–56, 707 A.2d 412, 415 (1998)

As shown in the Undisputed fact section herein, Plaintiff had her back to the cart corral when a cart, connected to a long row of shopping carts, crashed into her lower back, butt and lower legs.   It was an entire row of shopping carts connected to the cart that hit her. When Ms. Gatchell was struck, she screamed loudly.   Mr. Welch heard the Plaintiff scream.   Plaintiff explains it felt like the carts were "crashing into [her] body," causing her to "jolt."   Plaintiff was holding onto a shopping cart at the time she was struck, so obviously she did not fall.

Plaintiff felt immediate pain in her back, above her feet and the lower part of her legs from the occurrence.   Due to the pain, she sat at the Subway nearby.   She completed the

15

incident form, documented her injuries, got her yams and green beans and went home.

Her pain was so severe she sought medical care at Charles Regional Medical Center urgent care shortly after being hit by the carts.    According the medical records, under history of present illness, it indicates, "hit by shopping cart 2-3 hours prior to arrival, assisting bilateral back pain, 6/10. . . Positive for swelling . . . positive for Pain radiating to the left buttock. She was given an injection of lidocaine, her pain to a 2/10, but not completely taking it away.    She also produced photos of the light bruising and swelling.    (*See Exhibit 12, photos*).

The next day, Thanksgiving, she did not host dinner as she had originally planned but instead went to her mothers and rested on the couch.    (*See Exhibit 1, page 82, lines 1-17*).    The day after, she tried to work her shift from 7:00 am to 1:00 pm.    (*Exhibit 1, page 83, lines 8-18*). She could not do her job duties and ended up getting further medical care at Fort Washington Medical Center.    (*Exhibit 1, page 103, lines 13-20*).

Fort Medical Hospital records indicate that her injury took place at Walmart. She was having radiation to the leg.    Physical exam reveals for the neck painful range of motion and tenderness to paracervical.    Tenderness to palpation over thoracic and lumbar.    Diagrams were completed as well. She was diagnosed with acute back strain, injury to back, acute back pain, thoracic, lumbar, and with radiculopathy.    (*See Exhibit 13, medical records from Fort Washington Hospital Center, redacted for privacy reasons*).

Applying a combination of the factors; (1) there is a very close temporal relationship between the initial injury and the onset of the trauma (immediate); (2) the manifestation of the trauma in precisely the same part of the body that received the impact of the initial injury (she was struck in the low back and that is where her pain was); (3) some medical testimony could be

produced by the treating doctors and, even if it falls short of a certain diagnosis it would shed

insight onto her injures (physical examinations showing tenderness, spasms, limited range of

motion, numbness and tingling); and (4) an obvious cause-and-effect relationship that is within

the common knowledge of laymen (being hit by a long row of shopping carts would, using

common sense, cause injuries).   Additionally, even the Defendant's doctor diagnosis her with

back contusions and soft tissue injury.

Therefore, no expert is needed to demonstrate that Plaintiff sustained injuries to her lower

back. She was hit by a row of shopping carts, she was hit directly in her lower back, butt and

legs, she had immediate swelling and bruising and the jury can decide, using cause and effect

analysis and their common sense, that it is more likely than not she was injured in her lower back

due to being physically struck by a row of shopping carts.   However, the simplicity or her

injuries does not end there.

After having non-stop back pain, spasms, tenderness, limited range of motion, inability to

perform her job duties, numbness and tingling, she was referred by her doctor, Dr. Alfano, for an

MRI of the lower back.   The referral actually states, "MRI lumbar spine dx low back pain post

trauma."   She underwent the MRI of her lower back on December 23, 2015 and L4-L5, L5-S1

disc bulges were present with annular tears.   Therefore, within three weeks of being hit in her

lower back with a row of shopping carts, while having ongoing spasms, tenderness, limited range

of motion, numbness and tingling, and inability to perform job functions, Ms. Gatchell had disc

injuries and tearing exactly where she was hit by a long row of shopping carts at.

Again, applying the factors, the jury could easily determine, without expert testimony,

that Plaintiff's annular tears and disc abnormalities were caused by the direct trauma to her back

by a row of shopping carts.   The MRI was close in time to the injury, twenty-eight (28) days

later, after she continued to have relentless back pain with inability to work, it is the same part of

the body where she was hit at, and there is an obvious cause and effect relationship within he

common knowledge of laymen.   Further, there were no intervening injuries which occurred after

she was hit by the shopping carts which would break the chain of causation from then until the

time of the MRI's, she did not have pain before the occurrence and was able to work her job,

there are not other back injuries prior to the occurrence except for things decades before this

occurrence. A jury could easily determine it is more likely than not that these injuries were

caused by her being hit by the shopping carts.   Additionally, the only areas of her back on the

MRI which have these injuries are the lower part of her back, she said she was struck out.   They

are not seen in the other areas of her spine.   Another fact a lay person can rely upon.   Again, the

simplicity does not end there.

Since the occurrence, she had continued to have ongoing back pain in the exact same area

where she was hit.   On February 9, 2016, she underwent L4-L5, L5-S facet injections with Dr.

Barletta, on March 15, 2016, she underwent L4-L5, L5-S1 facet injections with Dr. Barletta, on

June 7, 2016, she underwent right sacroiliac joint block with Dr. Barletta, and on August 15,

2016, she underwent Lumbar Rhizotomy with Dr. Thompson, referred by Dr. Barletta.   The

injections gave her relief, but not permanent and total relief.   The relief from the procedures

wore off, as expected, and she returned to Dr. Barletta on June 26, 2017, who referred her for

another MRI of the low back which was done on June 28, 2017 and revealed that her disc

injuries and annular tearing were still present in her lower back.   (*See Exhibit 14, MRI, redacted*

*for privacy reasons*).

Again, applying the factors, the pain started immediately and was present ever since the occurrence, it was in the area she was hit at by the row of shopping carts, she has ongoing pain and limitations in her back evert since then and common sense dictates that if the disc injuries and tears were on films twenty eight (28) days after the occurrence and are still present on June 28, 2017 (553 days later), that these injuries are permanently going to bother her for the rest of her life.

As demonstrated, the injuries to her lower back are not complex and a jury, even being lay persons, can use their common sense and the cause and effect analysis to conclude, beyond a preponderance of the evidence, without speculation, that Ms. Gatchell sustained significant lower back injuries from being struck directly in her lower back by a long row of shopping carts being negligently operated by Mr. Welch.

## CONCLUSION

Defendant Walmart was directly negligent in allowing a dangerous condition to exist, the cart corral, and by failing to take reasonable steps to protect customers.    Defendant Walmart is also vicariously liable because its employee, Mr. Welch, breached safety rules when using the electronic cart pusher and was actually cited for operating it "recklessly" by Walmart.

Furthermore, even though Plaintiff doubts she will need to rely upon it, she has not waived her right to rely upon res ipsa loquitur and may, if she so decides, utilize that legal doctrine as the elements are satisfied and the occurrence would not have happened but for negligence.

Lastly, Plaintiff has properly disclosed and designated experts as demonstrated in

Plaintiff's Opposition to Defendant's Motion in Limine and the medical issues in this case are

very clear, simple and do not necessarily require expert testimony.

For those reasons, Plaintiff requests that this Honorable Court deny Defendant's Motion

for Summary Judgment and grant Plaintiff's Motion for Partial Summary Judgment as to the

issue of liability.

<div style="margin-left:40%">

Respectfully Submitted,

___/s/_____
MICHAEL A. KLOPFER, ESQ. (07172)
Law Offices of James E. Farmer, LLC
3475 Leonardtown Road, Suite 200
Waldorf, Maryland 20601
Mklopfer@farmer-law.com
(301) 843-3890
Attorneys for Plaintiff

</div>

### POINTS AND AUTHROITY

1. MPJI 24:1 (Basis for Premises liability)
2. MPJI 24:2 (Definition of invitee)
3. MPJI 24:3 (duty to invitee)
4. Eyerly v. Baker, 168 Md. 599, 178 A. 691 (1935)
5. MPJI 3:3 (vicarious liability)
6. MPJI 19:1 (Definition of negligence)
7. Ayala v. Lee, 215 Md. App. 457, 81 A.3d 584 (2013)
8. Dover Elevator Co. v. Swann, 334 Md. 231, 638 A.2d 762 (1994).
9. Vito v. Sargis & Jones, Ltd., 108 Md. App. 408, 672 A.2d 129 (1996)
10. Am. Airlines Corp. v. Stokes, 120 Md. App. 350, 355–56, 707 A.2d 412, 415 (1998)
11. S.B. Thomas, Inc. v. Thompson, 114, Md. App. 357 (1997),
12. *See Memorandum content and, Plaintiff reserves the right to rely upon any and all other legal authority at a hearing*

**LIST OF EXHIBITS**

1. Plaintiff's Deposition
2. Stipulation and Agreement
3. Brett Jens, Corporate Designee, Deposition
4. Daniel Welch Deposition
5. Video, short clip, of Daniel Welch moving carts into the cart corral with device
6. Still photos at 2:44:58
7. Discipline report
8. Charles Regional Medical Center Urgent Care report (redacted)
9. Defense Medical Examiner report (redacted)
10. MRI referral (redacted)
11. MRI #1 report (redacted)
12. Photos of bruising/swelling
13. Fort Washington Medical Center
14. MRI #2 report (redacted)

*Plaintiff reserves the right to present any and all items exchanged during discovery at a hearing*

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18th day of September, 2020, a copy of the foregoing Memorandum in Support it's Plaintiff's Opposition to Defendant's Motion for Summary Judgment and Plaintiff's Counter Motion for Partial Summary Judgment, was electronically filed and served via the Court's CM/ECF Systems upon:

Jennifer M. Alexander, Esquire
Federal Bar No.: 1522
MCNAMEE HOSEA JERNIGAN KIM
  GREENAN & LYNCH, P.A.
888 Bestgate Road, Suite 402
Annapolis, Maryland 21401
(443) 837-9800
jalexander@mhlawyers.com
*Attorneys for Defendants*

_/s/_____
MICHAEL A. KLOPFER, ESQ.