**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | |
|---|---|
| **CYNTHIA GATCHELL,** | \* |
| Plaintiff, | \* |
| v. | \*   Case No.: 19-cv-1649-PWG |
| **WALMART, INC.,** *et al.*, | \* |
| Defendants. | \* |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION AND ORDER**

Plaintiff Cynthia Gatchell visited the Defendants' Walmart store in La Plata, Maryland on November 25, 2015 to purchase some groceries for Thanksgiving dinner. She was struck from behind by a shopping cart, allegedly as the result of store employees' negligence. Am. Compl., ECF No.3. Ms. Gatchell filed suit against Walmart, Inc., Walmart Stores, Inc., Steve Teeter (a store employee), and John Doe (an unknown store employee), on November 12, 2018 in the Circuit Court for Charles County, Maryland. Compl., ECF No. 2. Ms. Gatchell then voluntarily dismissed the two individual Defendants, leaving only Defendants Walmart Inc. and Wal-Mart Stores East LP (collectively "Walmart"). Not., ECF No. 4. The case was removed to this Court by Walmart on June 3, 2019. Not. Removal, ECF No. 1. Walmart filed a motion seeking summary judgment, ECF No. 28, and also seeks to exclude Plaintiff's expert opinion testimony, ECF No. 29. Plaintiff responded with a cross-motion seeking partial summary judgment as to issues of liability, ECF No. 30. I have reviewed the filings for these pending motions,[1] and find that a hearing is not

---

[1] ECF Nos. 28, 29, 30, 31, 34, 35, 36, and all the accompanying exhibits, including video.

necessary. *See* Loc. R. 105.6 (D. Md. 2018).  For the reasons stated below, Defendants' Motion for Summary Judgment, ECF No. 28, is GRANTED IN PART and DENIED IN PART; Defendants' Motion *in Limine* to Exclude Plaintiff's Expert Opinion Testimony, Medical Records and Bills, ECF No. 29, is DENIED; and Plaintiff's Counter-motion for Partial Summary Judgment, ECF No. 30, is DENIED

## BACKGROUND

At the Walmart store in La Plata, Maryland, shopping carts are made available inside the store for customers. Jens Dep. 16-17, Pl.'s Resp. Ex. 3, ECF No. 30-4.[2] Walmart also employs "cart pushers" to retrieve carts from the parking lot and bring them inside the store to a cart corral.[3] *Id.* During the time of the incident at issue in this case, Daniel Welch was working as a cart pusher at the La Plata Walmart store and used an electronic cart pusher to assist with moving the shopping carts into the cart corral. *Id.* at 10-12.

On November 25, 2015, Ms. Gatchell went to the La Plata, Maryland Walmart store in the mid-afternoon to buy groceries for the next day's Thanksgiving dinner.  Pl.'s Dep. 41, 47, Defs.' Mot., Ex. 1, ECF No. 28-2.[4]  After retrieving a shopping cart from the cart corral located just inside the store, Ms. Gatchell turned with her back to the cart corral to place her sale paper into the basket of the cart and was struck from behind by a row of carts. *Id.* at 48-49.  She screamed an expletive and looked at the Walmart employee, later identified as Daniel Welch, who was pushing the carts

---

[2] Brett Jens testified as a representative on behalf of Walmart Stores East LP, which operated the Walmart La Plata store on the date of the incident at issue in this case. Jens Dep. 3, 7-8, Pl.'s Resp. Ex. 3, ECF No. 30-4.  The Jens deposition is also available as Defendants' Exhibit 3, ECF No. 28-4.
[3] The cart corral consists of four rows of carts with rails on the right and left of each row.  Jens Dep. 18-21.  The carts are pushed into the row from the back, and are available to the customers to retrieve from the front. *Id.*
[4] Ms. Gatchell's deposition transcript was also attached to Plaintiff's response in opposition.  Pl.'s Resp. Ex. 1, ECF No. 30-2.

into the cart corral from the other side. *Id.* at 49-50, 54-55; *see also* Welch Dep. 54-55, 70-71, Defs.' Mot. Ex. 2, ECF No. 28-3. Ms. Gatchell reports that she was struck in her lower back and thighs, which jolted her forward, although it did not cause her to fall or spill her drink.[5] Pl.'s Dep. 70. A manager was contacted, and because she was in pain, she sat down in the Subway inside the Walmart store, where she filled out an incident report with the manager. *Id.* at 51, 57-58. While there, Mr. Welch came in and apologized to her for the occurrence.[6] *Id.* at 57. After resting and filling out the incident report, Ms. Gatchell completed her shopping and drove home. *Id.* at 58-59.

Within 2-3 hours, Ms. Gatchell went to the Civista Medical Center Emergency Department for treatment for her lower back pain. Pl.'s Resp. Ex. 8, ECF No. 30-9. The records of that visit reflect that she reported swelling and radiating pain and was given an injection and prescribed pain patches. *Id.* Two days later, on November 27, 2015, Ms. Gatchell visited the Fort Washington Medical Center Emergency Department complaining of back and neck pain and headaches, and pain medication was prescribed. Riederman Eval. Rpt. 3, Pl.'s Resp. Ex. 9, ECF No. 30-10; Pl.'s Resp. Ex. 13, ECF No. 30-14; Pl.'s Dep. 84. Ms. Gatchell began visiting a chiropractor, Dr. Alfano, on November 30, 2015, who referred her for post-trauma diagnostic imaging (MRI lumbar spine), after which she contacted an attorney.[7] Riederman Eval. Rpt. 3-4; Pl.'s Dep. 85; Pl.'s Resp. Exs. 10-11, ECF Nos. 30-11, 30-12. On December 1, 2015, she visited Premier Orthopedics, where she saw Dr. Arango, who diagnosed a lumbar spine contusion, radiating right leg symptoms

---

[5] She believes that she was holding the cart and had already placed her drink in the cart. Pl.'s Dep. 48, 70.
[6] Mr. Welch was later disciplined in relation to the incident. Disciplinary Rpt., Pl.'s Resp. Ex. 7, ECF No. 30-8.
[7] On December 7, 2015, Dr. Alfano prepared a detailed report for the attorney. Riederman Eval. Rpt. 3.

3

and cervical spine strain, and later referred her to Dr. Barletta, a pain management doctor. Riederman Eval. Rpt. 4; Pl.'s Dep. 113. The MRI of her lower back on December 23, 2015 demonstrated L4-L5, L5-S1 disc bulges with annular tears. Pl.'s Resp. Ex. 11, ECF No. 30-12. Ms. Gatchell complains of ongoing pain and testifies that Dr. Alfano, as well as Dr. Barletta, have advised her that she experienced permanent injury from the Walmart incident. Pl.'s Dep. 88.

Ms. Gatchell sued Walmart and two individual Defendants in the Circuit Court of Charles County, Maryland on November 12, 2018. Compl., ECF No. 2. The individual Defendants—Daniel Welch, the cart pusher employee, and Steve Teeter, the general manager—were voluntarily dismissed, and the case was removed to this Court on June 3, 2019. *See* Nots., ECF Nos. 1, 4. Ms. Gatchell now asserts eight negligence causes of action against the two Walmart Defendants:

- Counts II, III – Respondeat Superior (relating to Daniel Welch)
- Counts VII, VIII – Negligent Hiring and Retention
- Counts IX, X – Negligence for Failure to Train
- Counts XI, XII - Negligence

Am. Compl., ECF No. 3. Count I – Negligence against John Doe (later identified as Daniel Welch), and Count IV – Negligence against Steve Teeter, were voluntarily dismissed. Not., ECF No. 4. Further, in her response in opposition to Walmart's motion, Plaintiff asserts that she will not move forward with Counts V and VI – Respondeat Superior (relating to Steve Teeter) because there has been no evidence that Steve Teeter was negligent. Pl.'s Resp. Mem. 7, ECF No. 30-1.

The Walmart Defendants move for summary judgment in their favor on the basis that Ms. Gatchell cannot establish negligence because Walmart did not breach any duty owed to Ms. Gatchell. Mot. Mem. 5, ECF No. 28-1. Walmart also moves to preclude Ms. Gatchell from introducing any expert testimony on the basis that she failed to comply with the expert witness disclosure requirements of Federal Rule of Civil Procedure 26(a)(2). MIL Mot. Mem. 1-2, ECF

No. 29-1.  In response, Ms. Gatchell moves for partial summary judgment as to the issue of liability for negligence.  Pl.'s Resp. 1-20.

## STANDARD OF REVIEW

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin*, 714 F.3d at 833.  "A disputed fact presents a genuine issue 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'"  *Cole v. Prince George's Cty.*, 798 F. Supp. 2d 739, 742 (D. Md. 2011) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

If this initial burden is met, the opposing party may not rest on the mere allegations in the complaint.  *Anderson*, 477 U.S. at 247-48.  Rather, the burden shifts to the nonmoving party to identify evidence showing that a genuine dispute exists as to material facts.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 & n.10 (1986).  The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment.  *Anderson*, 477 U.S. at 251-52.  Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment.  *Id.*  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, summary judgment is appropriate.  *Id.* at 248–49.

In reviewing the evidence related to a motion for summary judgment, the Court considers the facts in the light most favorable to the non-moving party if there is a genuine dispute as to those facts.  *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009); *George & Co., LLC v. Imagination*

*Entm't Ltd.*, 575 F.3d 383, 391–92 (4th Cir. 2009); *Dean v. Martinez*, 336 F. Supp. 2d 477, 480 (D. Md. 2004). And the Court may not make credibility determinations when assessing contradictory testimony or affidavits. *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). The Court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

"On cross motions for summary judgment, 'each motion [is] considered individually, and the facts relevant to each [are] viewed in the light most favorable to the non-movant.'" *Lynn v. Monarch Recovery Management, Inc.*, No. WDQ-11-2824, 2013 WL 1247815, at *1 n.5 (D. Md. Mar. 25, 2013) (quoting *Mellen v. Bunting*, 327 F.3d 355, 363 (4th Cir. 2003)). "Cross motions for summary judgment 'do not automatically empower the court to dispense with the determination whether questions of material fact exist.'" *Equal Rights Center v. Archstone Smith Trust*, 603 F. Supp. 2d 814, 821 (D. Md. 2009) (quoting *Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Voigt*, 700 F.2d 341, 349 (7th Cir. 1983)). Rather, the court considers "'each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law.'" *Defenders of Wildlife v. N. Carolina Dep't of Transp.*, 762 F.3d 374, 392 (4th Cir. 2014) (quoting *Bacon v. City of Richmond, Va.*, 475 F.3d 633, 638 (4th Cir. 2007)).

## ANALYSIS

**I.     Defendants' Motion to Preclude Plaintiff's Expert**

Defendants contend that Plaintiff did not provide any written reports of any proposed expert, or any of the other information required pursuant to Federal Rule of Civil Procedure

6

26(a)(2), which has prejudiced the Defendants in preparing their case.  MIL Mot. Mem. 2, ECF No. 29-1.  As a result, they request that Plaintiff be precluded from introducing any expert opinion testimony at trial and from introducing any medical records and bills into evidence. *Id.* Under the Scheduling Order for this case, Plaintiff's deadline for serving her disclosure was March 2, 2020.  Sched. Order, ECF No. 11.  Ms. Gatchell served her disclosure on February 28, 2020, designating an orthopedic surgeon, Dr. Franchetti, as well as her chiropractor, Dr. Alfano, and two pain management specialists, Dr. Barletta and Dr. Brouillete.  Pl.'s Discl., MIL Mot. Ex. 2, ECF No. 29-3, so this is not a case where the Defendant is entirely as sea when it comes to possible adverse expert evidence.  Instead, Defendant complains that the disclosures did not supply the required detail and must, therefore, be excluded pursuant to Rule 37(c)(1), which provides that "if a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."

Though district courts have "broad discretion" to decide whether a failure to disclose was substantially justified or harmless, the Fourth Circuit has held that courts "should" consider five factors:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the non-disclosing party's explanation for its failure to disclose the evidence.

*Sanchez Carrera v. EMD Sales, Inc.*, 402 F. Supp. 3d 128, 138 (D. Md. 2019) (quoting *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003)). The party that fails to disclose the evidence bears the burden of "establish[ing] that nondisclosure was

7

substantially justified or harmless." *Id.* (quoting *Wilkins v. Montgomery*, 751 F.3d 214, 222 (4th Cir. 2014)).

Regarding these factors, Ms. Gatchell timely identified her experts, including the subject matter on which they would testify, and a summary of the experts' opinions. *See* Pl.'s Discl. (designating expert witnesses on February 28, 2020). She also produced the doctors' medical reports and their curricula vitae. Pl.'s Resp. 3. The same experts had previously been identified in Plaintiff's Interrogatory Responses on February 8, 2019, including statements about the medical experts' opinions. Pl.'s Interrogatory Resp. ¶ 5, Pl.'s MIL Resp. Ex. 2, ECF No. 31-3; *see also* Damages Discl., Pl.'s MIL Resp. Ex. 3, ECF No. 31-4 (disclosing economic and non-economic damages sought). While Walmart complains that a formal report was not provided from the non-treating physician, Dr. Franchetti,[8] and that the information provided overall lacked sufficient specificity, Walmart does not complain that it has been surprised. Nor could it. Expert depositions have not yet been scheduled. In their joint status report filed in June 2020 at the end of discovery, the parties agreed that expert depositions would be taken outside the discovery deadline. *See* ECF No. 22. At the end-of-discovery telephone conference, Defendants did not raise any issues with the quality of Plaintiff's disclosures, and the parties agreed to defer expert depositions until after the ruling on the intended summary judgment motions.[9]

---

[8]  Plaintiff asserts that Dr. Franchetti provided medical treatment to the Plaintiff and developed a doctor-patient relationship. Pl.'s MIL Resp. 1. For treating physicians, Rule 26(a)(2)(C) only requires the written report to disclose: "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C). Non-treating physicians employed to provide expert testimony must provide a more comprehensive written report. Fed. R. Civ. P. 26(a)(20(B).
[9]  I note that Defendants did not raise this issue in their pre-motion letter nor during the end-of-discovery conference.

Further, at this point there is no trial scheduled, and Walmart could have, and still can, easily seek supplementation of the information provided, so that any deficiencies can be cured, and thus there would be no disruption to the trial. *See Sanchez Carrera*, 402 F. Supp. 3d at 138 (noting that when trial has not yet been scheduled, the factor concerning disruption of trial "only leans slightly in favor of exclusion"); *see also Moore v. Peitzmeier*, Civil Action No. TDC-18-2151, 2020 WL 94467, at *13 (D. Md. Jan. 7, 2020) (noting that Defendants should not have been unduly surprised by disclosures when they were aware that the Plaintiff planned to call treating physicians, they had access to the medical records relating to those treating physicians, and there was an ability to cure). And finally, Plaintiff has not willfully withheld any information from Defendants and believes that she has provided timely and adequate disclosures "on several occasions." Pl.'s MIL Resp. 1.[10] With regard to Dr. Franchetti, Plaintiff notes that she provided a report from him to Defendants, which was incorporated by reference into her disclosure, and she received no complaints from Defendants about it being missing or inadequate. *Id.* at 5 (citing Pl.'s MIL Resp. Ex. 5, ECF No. 31-6).

The evidence is necessarily important, since it relates to Ms. Gatchell's damages as well as liability. It does not present any new factual basis for Ms. Gatchell's claims and has been central to her case from the beginning. "[A] court may admit evidence that a party failed to disclose adequately where the other party knew that the issue to which the evidence related 'was a central issue in the case.'" *Moore*, 2020 WL 94467, at *13 (quoting *Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 193 (4th Cir. 2017)). Defendants' own expert, Dr. Riederman, advanced opinions

---

[10] Plaintiff also notes that any inadvertent failure on her part occurred during a national pandemic and resultant administrative issues despite best efforts. Pl.'s MIL Resp. 8.

9

favorable to Walmart on the same issues and relies on the same underlying medical reports provided by the Plaintiff.

Defendants argue that they have been prejudiced similarly to the defendant in *Barnes v. Costco Wholesale Corp.*, in which the plaintiff made generic disclosures that were not in compliance with Rule 26(a)(2). MIL Mot. 7 (citing *Barnes v. Costco Wholesale Corp.*, CIVIL NO. JKB-18-3377, 2019 WL 3767506 (D. Md. Aug. 9, 2019)). However, the circumstances are not analogous. In *Barnes*, a week *after* the disclosure deadline, the Plaintiff disclosed eight treating physicians as expert witness without providing expert reports. 2019 WL 3767506, at *1. The defendant moved to strike the disclosures as untimely and deficient. *Id.* Judge Bredar *denied* the defendant's motion at that time as premature and ordered the plaintiff to provide "at least abbreviated expert reports" by a date certain, warning that the failure to do so would result in the exclusion of expert testimony. *Id.* The plaintiff filed amended disclosures for only two of the eight treating physicians she had previously identified, disclosed a newly retained expert, and a day later provided an additional treating physician report. *Id.* Defendant then filed a motion to exclude the testimony of the five treating physicians for whom no expert reports were disclosed, the treating physician whose report was a day late, and the newly retained expert. *Id.* at *2. *Barnes* is altogether different than the facts of this case. Here, Plaintiff's disclosures were timely, summary reports including opinion statements were provided, and Plaintiff has not yet been given an opportunity to cure any deficiencies. As discussed above, the factors relating to harmlessness and justification weigh in favor of Ms. Gatchell, and there is time and opportunity to cure any deficiencies.

Accordingly, I will not exclude Plaintiff's experts at this time, and Defendants' Motion in *Limine* to Exclude Plaintiff's Expert Opinion Testimony, Medical Records and Bills Pursuant to Fed. R. Civ. P. 37(c)(1), ECF No. 29, is DENIED.

## II.     Summary Judgment Motions

In order to bring a negligence claim under Maryland law, *see Erie R.R. v. Tompkins,* 304 U.S. 64, 78 (1938), the plaintiff must prove: "(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of duty." *Lloyd v. Gen'l Motors Corp.*, 915 A.2d 256, 270-71 (Md. 2007) (quoting *Valentine v. On Target*, 727 A.2d 947, 949 (Md. 1999)). In premises liability cases, the duty of care owed by the owner or occupier of a premises varies depending on his or her relationship with the person entering the premises. *Casper v. Chas. F. Smith & Son, Inc.*, 560 A.2d 1130, 1333 (Md. 1989). "[T]he proprietor of a store owes a duty to his customers to exercise ordinary care to keep the premises in a reasonably safe condition, and will be liable for injuries sustained in consequence of a failure to do so." *Rawls v. Hochschild, Kohn & Co.*, 113 A.2d 405, 407 (Md. 1955). But a store proprietor "is not an insurer of the safety of his customers while they are on the premises and no presumption of negligence on the part of the proprietor arises merely from a showing that an injury was sustained in his store." *Mouldon v. Greenblet Consumer Servs., Inc.*, 210 A.2d 724, 725 (Md. 1965). Thus, in order to prove that Walmart breached its duty of care, Ms. Gatchell bears the burden of demonstrating "[1] that a dangerous condition existed, . . . [2] that [Walmart] 'had actual or constructive knowledge of it, and [3] that that knowledge was gained in sufficient time to give the [store] the opportunity to remove it or to warn [Ms. Gatchell].'" *Rehn v. Westfield Am.*, 837 A.2d 981, 984 (Md. 2003) (quoting *Keene v. Arlan's Dep't Store of Baltimore, Inc.*, 370 A.2d 124

11

(Md. Ct. Spec. App. 1977)). "What will amount to sufficient time depends upon the circumstances of the particular case, and involves consideration of the nature of the danger, the number of persons likely to be affected by it, the diligence required to discover or prevent it, opportunities and means of knowledge, the foresight which a person of ordinary care and prudence would be expected to exercise under the circumstances, and the foreseeable consequences of the conditions.'" *Id.* at 984-85 (citations omitted).

Walmart contends that there is no evidence to show that either Walmart or Mr. Welch breached any duty to Ms. Gatchell. Defs.' Mot. Mem. 1, 6-9. Ms. Gatchell contends that the cart corral's design and Walmart's policies created a danger to customers, of which it was aware, and Walmart's lack of action to protect customers is evidence of negligence. Pl.'s Resp. 9-10. She also asserts that Mr. Welch did not take reasonable care to ensure the area was clear before pushing the carts into the corral, pushed more than 20 carts in violation of store policy, used the electronic cart pusher rather than manual force inside the store, and Walmart is vicariously liable for his negligence. *Id.* at 10-13. Ms. Gatchell identifies the following evidence:

- There is no rail at the front of the cart corral to prevent carts from moving forward into the area where customers are retrieving carts. Jens Dep. 20-21. Walmart knew that there was a likelihood that shopping carts may move forward in the direction where customers were retrieving the carts. *Id.* at 26.

- There are no warning signs or caution signs to let customers know that employees may be stocking shopping carts into the cart corral. *Id.* at 21. Also, no special precautions were taken during a busy time such as Thanksgiving shopping hours. *Id.* at 44.

- Mr. Welch was disciplined for operating the cart pusher recklessly. *Id.* at 22; Pl.'s Resp. Ex. 7.

- Mr. Welch's job was to focus on steering the carts. *Id.* at 28-29. Mr. Welch did not take proper care to see if a customer was at the front of the cart corral, and he did not wait for Ms. Gatchell to exit the area before pushing the carts into the cart corral as he should have done. *Id.* at 29.; Welch Dep. 42; Video, Defs.' Ex. 4, Pl.'s Ex. 5.

- Ms. Gatchell also contends that the video evidence shows that Mr. Welch used force from the electronic cart pusher to move the carts into the cart corral, and he had more than the allowable 20 carts in the row to push forward. Pl.'s Resp. 11-12.

- A second video shows Ms. Gatchell walking forward, holding her back, after she was hit. Pl.'s Reply, Ex. 2, ECF No. 36. Ms. Gatchell contends there is missing surveillance video showing when she was struck by the carts, as evidenced by Walmart's manager telling her that he saw the video of her being hit, as well as the disciplinary document's details. *See* Pl.'s Reply 5.

Walmart asserts that Ms. Gatchell's evidence is nothing more than speculation or conjecture, which is insufficient to warrant submission of the case to a jury. Defs.' Mot. Mem. 8. There are, however, material facts in dispute regarding whether extra force was used to push the carts, whether the number of carts being pushed into the cart corral exceeded the maximum allowed, whether there was a proper lookout for a customer in the cart corral area, and whether Walmart had adequate safety precautions, warnings, and policies in place to prevent a customer from being hit by a cart from the cart corral, knowing that such an occurrence was foreseeable. Walmart owed Ms. Gatchell, as a customer, a duty of reasonable care to warn against hidden dangers and protect against foreseeable harm, and Ms. Gatchell had a duty to exercise due care for her own safety. *Tennant v. Shoppers Food Warehouse Md. Corp.*, 693 A.2d 370, 374 (Md. Ct. Spec. App. 1997). Determining whether a condition presents an open and obvious danger is typically a fact-specific inquiry that usually should be left for the jury. *Feldman v. NVR, Inc.*, No. GJH-14-0672, 2014 WL 6066022, at *4 (D. Md. Nov. 12, 2014) (citing *C & M Builders, LLC v. Strub*, 22 A.3d 867, 885 (Md. 2011)). Based on the record before me, I cannot conclude that the condition and harm were unforeseeable so as to preclude recovery for negligence or that Mr.

Welch's actions were not negligent. Neither Walmart nor Ms. Gatchell is entitled to judgment as a matter of law regarding whether Walmart breached its duty of care.[11]

Defendant also contends that Plaintiff's claimed injuries are too complicated to be submitted to a jury in the absence of expert testimony. Defs.' Mot. Mem. 12 (citing *Desua v Yokim*, 768 A.2d 56 (Md. Ct. Spec. App. 2001)). In *Desua*, summary judgment was granted in favor of the defense because an expert was needed to establish causation in the context of a soft tissue injury in a rear-end vehicle accident case. 768 A.2d at 57. Defendant argues that Ms. Gatchell's pain and suffering may have been caused by "age-related degenerative changes," a later motor cycle accident, for which she was also treated for back injuries, or a fall at work when she fell backwards while sitting in a chair. Defs.' Mot. Mem. 14. With these alternate theories of causation, expert testimony is required to establish causation between the alleged incident and her alleged injuries. *Id.* However, Defendant's own expert's evaluation establishes causation of "some" injury from the incident:

> Based on the history provided to me by Ms. Gatchell at today's evaluation, she sustained soft tissue injuries and contusions to her low back and the backs of both of her legs when she was struck by a long row of shopping carts pushed by an employee at a Walmart store on November 25, 2015.

Riederman Eval. Rpt. 4. Further, as discussed above, because I have not excluded the Plaintiff's medical witnesses, she will not be without expert testimony at trial. Accordingly, Walmart is not entitled to summary judgment as a matter of law on the issue of causation.

---

[11] I agree with Walmart, however, that the circumstances do not lend themselves to a finding of negligence under the doctrine of *res ipsa loquitur*, which "is applicable only when the facts and surrounding circumstances tend to show that the injury was the result of some condition or act which ordinarily does not happen if those who have the control or management thereof exercise proper care." *Holzhauer v. Saks & Co.*, 697 A.2d 89, 93 (Md. 1997) (quoting *Greeley v. Baltimore Transit Co.*, 22 A.2d 460, 461 (1941)).

Finally, Defendants seek summary judgment on Counts VII, VIII, IX, and X, which assert claims of negligent hiring, retention, and failure to train and/or supervise employees. Defs.' Reply 3, ECF No. 34. Defendants assert that Plaintiff had agreed to dismiss these claims, as confirmed on the record at Plaintiff's deposition on March 19, 2019. *Id.* (citing Pl.'s Dep. 147). Defendants add that regardless of the agreement to dismiss these claims, there is no evidence in the record to support the claims. *Id.* at 3-4. Plaintiff argues that the discussion held at her deposition was never finally agreed to and reduced to writing; she dismissed the individual Defendants only and not the additional counts of negligence. Pl.'s Reply 5-6. Plaintiff, however, chooses not to argue the point other than to say that if she must proceed to prove liability at trial, she has the support to argue that Mr. Welch admitted he had done similar actions in the past so was not properly trained or supervised. *Id.* at 6. Ms. Gatchell, however, provides no details of what that "support" entails.

The agreement to which Defendants cite includes the following dialog between Walmart's attorney, Ms. Alexander, and Ms. Gatchell, and her attorney, Mr. Klopfer:

> So your attorney and I have had a conversation, and we are going to draft up a stipulation -- in fact, Mr. Klopfer is going to draft up a stipulation that, in essence, is going to clean up or narrow the claim to the negligence claim against Walmart. As you've heard, that I'm stipulating that your lawyer has, in fact, sued the proper entity and that he's going to put some more detail in that stipulation, including that since he has sued the proper entity and that the cart pusher, I'm stipulating, was an employee of my client at the time of the incident and that he was acting in the scope of his employment at the time of the incident, your attorney then is going to dismiss the individuals, Mr. Teeter and Mr. Doe. He's not going to sue Mr. Welch personally since he has the vicarious liability theory; and he's going to dismiss the negligent hiring, negligent retention, and negligent training claims. And we're going to work all that out in writing.
>
> MR. KLOPFER: Yes.
>
> MS. ALEXANDER: If that somehow gets derailed -- and I don't think it will, but if it does, then I'm reserving the right to come back and ask you questions about all of those issues. For today's

15

>purposes, I'm not going to ask you those questions because I think your attorney and I are going to resolve it amongst ourselves.

Pl.'s Dep. 146-47. The Agreement and Stipulation dismissed the individual Defendants and stated, "however, such dismisal [sic] shall have no impact on Plaintiff's right to pursue vicarious liability counts against the remaining Defendants and shall have no impact on Plaintiff's right to pursue direct negligence counts against the remaining Defendants." Pl.'s Resp. Ex. 2 ¶ G, ECF No. 30-3. Plaintiff argues that negligent hiring, retention and training are all "direct negligence counts."[12] Pl.'s Reply 5-6. Certainly, the discussion during Plaintiff's deposition was not final and it is the actual agreement that is binding. However, Plaintiff has not identified any evidence or argument to show that a genuine dispute exists as to these claims; she has not pointed to any facts showing that there is an issue for trial. Accordingly, I shall grant Defendants' motion with regard to the negligent hiring, retention, and training claims.

## CONCLUSION

In sum, Defendants have not established entitlement to judgment as a matter of law regarding negligence under Counts II, III, XI, and XII. However, I shall grant Defendants' motion for summary judgment on Counts VII, VIII, IX, and X related to negligent hiring, retention, and training. Plaintiff has not established entitlement to judgment as a matter of law as to Defendants'

---

[12] To establish a claim for negligent training and supervision, a plaintiff must prove five elements: (1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in training or supervising the employee as the proximate cause of the plaintiff's injuries. *Williams v. Wicomico County Bd. of Educ.*, 836 F. Supp. 2d 387, 400 (D. Md. 2011) (citation omitted). And to prove a claim of negligent hiring, the plaintiff must establish: (1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring or retaining the employee as the proximate cause of plaintiff's injuries. *Asphalt & Concrete Services, Inc. v. Perry*, 108 A.3d 558, 571 (Md. Ct. Spec. App. 2015) (citation omitted).

liability for negligence. Defendants' motion to exclude Plaintiff's expert opinion testimony, medical records and bills is denied. This case shall proceed, expert depositions will take place, and then the case will be set for trial on the remaining negligence claims (Counts II, III, XI, and XII).

## ORDER

For the foregoing reasons, it is, this 17th day of March, 2021, hereby ORDERED that:

1. Defendants' Motion for Summary Judgment (ECF No. 28) is GRANTED IN PART and DENIED IN PART;
    a. Summary judgment is denied with regards to Counts II, III, XI, and XII;
    b. Summary judgment is granted with regard to Counts VII, VIII, IX, and X;

2. Plaintiff's Counter-motion for Partial Summary Judgment (ECF No. 30) is DENIED;

3. Defendants' Motion *in Limine* to Exclude Plaintiff's Expert Opinion Testimony, Medical Records and Bills (ECF No. 29) is DENIED; and

4. A status call will be scheduled to discuss completion of expert discovery and further trial proceedings.

_____/S/_____
Paul W. Grimm
United States District Judge